UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| BRANDON HARPER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 1:21-cv-02546-SEB-MG |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**Order Discussing Motion for Relief Pursuant to 28 U.S.C. § 2255
and Denying Certificate of Appealability**

For the reasons explained in this Order, the motion of Brandon Harper for relief pursuant to 28 U.S.C. § 2255 must be **denied** and the action dismissed with prejudice. In addition, the Court finds that a certificate of appealability should not issue.

### I. The § 2255 Motion

A motion pursuant to 28 U.S.C. § 2255 is the presumptive means by which a federal prisoner can challenge his conviction or sentence. *See Davis v. United States*, 417 U.S. 333, 343 (1974). A court may grant relief from a federal conviction or sentence under § 2255 "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "Relief under this statute is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States*, 723 F.3d 870, 878-79 (7th Cir. 2013) (citing *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996); *Barnickel v. United States*, 113 F.3d 704, 705 (7th Cir. 1997)).

## II. Factual Background

### A. Offense Conduct

The following summary of Mr. Harper's criminal conduct is taken from the stipulated factual basis included in his plea agreement (Cr. Dkt. 30 at 7–10), the truth of which Mr. Harper admitted at his change of plea and sentencing hearing (Cr. Dkt. 67 at 18-19).

As of November 2018, Mr. Harper was on probation for felony forgery and had one other previous felony conviction. He knew that he was not allowed to have firearms. In November 2018, Mr. Harper worked with a third party and attempted to have the third party buy firearms on his behalf. He and his father also formed an agreement under which his father would buy guns on his behalf and he would then sell them. They attempted one such purchase at a Cabela's store in November 2018. During that visit, Mr. Harper was shopping for ammunition and had placed significant amounts of ammunition in his shopping cart. When the store refused to sell the guns to his father, his father headed straight to him, and they left the store together without the ammunition being purchased. In January 2019, probation officers searched Mr. Harper's bedroom and found multiple firearms, as well as a silencer that bore no serial number. Crim. Dkt. 30, Part V.

### B. Indictment and Guilty Plea

On May 14, 2019, Mr. Harper was charged in a five-count indictment with the following: (1) conspiracy to fraudulently acquire firearms from a federally licensed firearms dealer, in violation of 18 U.S.C. § 371 (Count 1); (2) unlawful possession of ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count 2); (3) attempted unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count 3); (4) unlawful possession of a firearm by a convicted felon in violation of § 18 U.S.C. § 922(g)(1) (Count 4);

and (5) possession of a firearm in violation of 26 U.S.C. § 5861 (Count 6). Cr. Dkt. 12. After his detention hearing, Mr. Harper was released on his own recognizance to pretrial supervision. Cr. Dkt. 11.

On October 9, 2019, and on the advice of counsel, Mr. Harper filed a petition to plead guilty and plea agreement, under which he agreed to plead guilty to Count 4, and the government agreed to dismiss Counts 1, 2, 3, and 5. Dkt. 30. The government also agreed that Mr. Harper should receive a two-level reduction for acceptance of responsibility and stated its intent to seek another one-level reduction after Mr. Harper pleaded guilty. *Id.* at 12. As part of the agreement, Mr. Harper stipulated to the factual basis set forth above. *Id.* at 7. He was advised that Count 4 was punishable by not more than 10 years of imprisonment. *Id.* at 2. He was advised that the Court would use its discretion to fashion a sentence within the statutory range using the factors in 18 U.S.C. § 3553(a) and considering the Sentencing Guidelines. *Id.* He was advised that the Sentencing Guidelines are advisory and that the Court would make the final decision on the applicable guideline sentencing range. *Id.* at 3. He agreed that he was waiving his right "to appeal the conviction imposed in this case on any ground" and he was waiving his right to appeal any sentence imposed within or below the advisory guidelines as determined by USPO in the presentence investigation report in the case. *Id.* at 12–13. He acknowledged that he had read the entire plea agreement and understood all its terms. *Id.* at 15. He represented that, except for the plea agreement, no person "has made any promise or suggestion of any kind to me . . . that I would receive a lighter sentence . . . if I would plead 'Guilty.'" *Id.*  He acknowledged that "no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this document, to induce the defendant to plead guilty." *Id.* at 18.

On February 28, 2020, a petition for action on conditions of pretrial release was filed, alleging that Mr. Harper was charged with escape in Marion County, Indiana; had a new arrest on February 25, 2020; failed to advise pretrial services of any change in residence or phone number; and traveled to Kentucky without pre-approval from pretrial services. Dkt. 8-1 at 3. He was arrested on the warrant in the Eastern District of Kentucky and was transported to the Southern District of Indiana. *Id.* On September 24, 2020, the Court held a pretrial release violation hearing, where Mr. Harper admitted to all the violations and consented to detention. *Id.*

**C.    Plea and Sentencing Hearing**

Mr. Harper's plea and sentencing hearing was held on March 3, 2021. Cr. Dkt. 53. Mr. Harper represented to the Court that he read through the plea agreement before he signed it, went over every part of the agreement with his counsel so he could understand its implications, the plea agreement was the entire plea agreement, no one persuaded him or coerced him against his will to enter the agreement, he freely and voluntarily entered the agreement after discussing it with his counsel, understood that the maximum sentence was 10 year in prisons, understood that he was waiving his appeal rights. Cr. Dkt. 67 at 5–10, 16–17. The Court advised him that, under the plea agreement, the Court would make the sentencing decision. *Id.* at 8. Mr. Harper admitted that the stipulated factual basis was true. *Id.* at 18–19. Mr. Harper then entered a plea of guilty, which the Court accepted. *Id.* at 19–20.

The Court proceeded to sentencing. The Court determined that, as stated in the Presentence Investigation Report, Mr. Harper's sentencing guidelines range was 77-to-96 months of imprisonment, which included a two-level adjustment for acceptance of responsibility. *Id.* at 26; dkt. 44 at 7, 15. Because Mr. Harper had absconded from pretrial release, the government had declined to move for the additional one-level adjustment mentioned as a possibility in the

plea agreement. Cr. Dkt. 64 at 41. The government argued for a sentence of 96 months, noting that it could have contested the previous promise of a two-level adjustment for acceptance of responsibility because Mr. Harper had absconded from pretrial supervision and, indeed, would have been justified in withdrawing from the plea agreement entirely. *Id.* at 40–41. Mr. Harper's counsel argued for a downward departure, emphasizing Mr. Harper's positive characteristics and the letters of support he had submitted from Mr. Harper's family members. *Id.* at 36–40. He also argued that Mr. Harper was a good young man who had made some very bad decisions. *Id.* at 36–40. Ultimately, the Court imposed a sentence of 84 months and granted the government's motion to dismiss Counts 1, 2, 3, and 5 of the indictment. *Id.* at 50, 52.

### III. Discussion

In his § 2255 motion, Mr. Harper argues that his counsel was ineffective in multiple ways, which the Court summarizes as follows: (1) counsel failed to properly inform him of the consequences of the guilty plea; (2) counsel failed to object to the use of relevant conduct and false statements the prosecution made at sentencing; (3) counsel failed to adequately consult Mr. Harper about his right to appeal; (4) counsel accepted the United States' version of the facts, and failed to learn background facts that would have resulted in a lesser sentence; (5) counsel refused to fight or argue for Mr. Harper; and (6) counsel insisted on pursuing a plea agreement. Dkt. 1.

A petitioner claiming ineffective assistance of counsel bears the burden of showing (1) that trial counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 688–94 (1984); *Resnick v. United States*, 7 F.4th 611, 619 (7th Cir. 2021). If a petitioner cannot establish one of the *Strickland* prongs, the court need not consider the other. *Groves v. United States,* 755 F.3d 588, 591 (7th Cir. 2014). To satisfy the first prong of the

*Strickland* test, the petitioner must direct the Court to specific acts or omissions of his counsel. *Wyatt v. United States,* 574 F.3d 455, 458 (7th Cir. 2009). The Court must then consider whether in light of all the circumstances counsel's performance was outside the wide range of professionally competent assistance. *Id.* On the prejudice prong, a petitioner "must show that but for counsel's errors, there is a reasonable probability that the result would have been different." *Perrone v. United States*, 889 F.3d 898, 908 (7th Cir. 2018) (cleaned up).

     A.        **Ground One: Consequences of Guilty Plea**

In Ground One, Mr. Harper contends that counsel failed to inform him of the consequences of a guilty plea. He admits that counsel told him that he was facing a guidelines range of 77-to-96 months, which included adjustments because he absconded from pretrial release. But, he contends, counsel told him that he would not get that much time, that 36 months was a fair sentence, and that, in counsel's experience, the Court would not hand down a sentence in the 77-to-96-month range. Dkt. 1 at 2; dkt. 9.

This claim of error fails. Counsel did not perform deficiently. To begin, the plea agreement accurately sets forth the possible range of sentences of imprisonment—zero to 10 years. Cr. Dkt. 30 at 2. And even Mr. Harper admits that counsel accurately advised him that he faced a sentence of 77-to-96 months in prison. Dkt. 1 at 2. Notably, the plea agreement accurately states that the guidelines are advisory and that the Court could impose a sentence below, within, or above those guidelines. Cr. Dkt. 30 at 3. The plea agreement also states that no promises were made to induce Mr. Harper to plead guilty other than those stated in the agreement itself. *Id.* at 18. Moreover, at the sentencing, Mr. Harper represented to the Court that he read the entire plea agreement, his counsel went over the whole agreement with him so that he would understand all its implications, nothing was left out of the plea agreement, and no one

6

persuaded or coerced him to enter the agreement against his will. And, before he entered his guilty plea, the Court explicitly informed Mr. Harper that, under the plea agreement, the Court would make the sentencing decision.

Perhaps Mr. Harper's complaint is not with counsel's failure to advise him of the consequences of pleading guilty, but with counsel's allegedly incorrect prediction of what sentence the Court would impose. But an attorney's "mere inaccurate prediction of a sentence does not demonstrate the deficiency component of an ineffective assistance of counsel claim." *United States v. Martinez*, 169 F.3d 1049, 1053 (7th Cir. 1999) (cleaned up). To the extent that Mr. Harper is claiming that he was "promised" a 36-month sentence or failed to understand that he could receive a sentence higher than that, his current position "is belied by his own statements at the change of plea hearing, which are presumed truthful." *Bridgeman v. United States*, 229 F.3d 589, 592 (7th Cir. 2000); *see Hurlow v. United States*, 726 F.3d 958, 968 (7th Cir. 2013) ("[R]epresentations made to a court during a plea colloquy are presumed to be true." (cleaned up)); *cf. Nunez v. United States*, 495 F.3d 544, 546 (7th Cir. 2007) ("Defendants cannot obtain relief by the expedient of contradicting statements freely made under oath, unless there is a compelling reason for the disparity."), *judgment vacated and remanded on other grounds*, 554 U.S. 911 (2008). Mr. Harper has not given the Court any reason to disregard his representations to the Court, let alone a compelling one.

In any case, even if Mr. Harper could show that counsel somehow performed deficiently in advising him of his sentencing exposure, he cannot show that the error prejudiced him. When a petitioner claims that counsel's ineffective performance caused him to accept a guilty plea rather than go to trial, he can show prejudice by demonstrating a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to

trial." *Lee v. United States*, 582 U.S. 357, 364–65 (2017) (cleaned up). Mr. Harper does not even make a conclusory claim that he would have insisted on going to trial absent counsel's alleged errors, let alone establish a reasonable probability that he would have done so.[1]

Ground One fails.

### B. Ground Two: Failure to Object to Use of Relevant Conduct and False Statements

In Ground Two, Mr. Harper argues that counsel was ineffective because he failed to object to the use of "relevant conduct" with which he had not been charged and failed to object to inaccurate statements made by the prosecution. Dkt. 1 at 2, 4–5. Courts may, in some circumstances, consider uncharged relevant conduct at sentencing. *See, e.g.*, *United States v. Taylor*, 272 F.3d 980, 982 (7th Cir. 2001) ("[T]he guidelines permit the court to consider certain conduct with which the defendant has not been charged."). But Mr. Harper fails to specify what relevant uncharged conduct should not have been considered at sentencing, and he identifies no allegations of relevant uncharged conduct considered at sentencing but not true. Likewise, he identifies no false statements made by the prosecution at sentencing. That is, he fails to explain why it was objectively unreasonable for counsel to fail to object to the use of relevant uncharged conduct at sentencing and allegedly untrue remarks made at sentencing. As explained, perfunctory and undeveloped arguments such as this are waived. *M.G. Skinner & Associates Ins. Agency, Inc. v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017). "It is not the obligation of the court to research and construct the legal arguments open to parties . . . ." *Riley v. City of Kokomo*, 909 F.3d 182, 190 (7th Cir. 2018) (internal quotation omitted).

---

[1] In his reply, Mr. Harper stated, for the first time, that he "would not have agreed to the plea deal offered had [he] been properly advised of the full consequences of it," dkt. 9, but he still has not claimed that he would have insisted on going to trial, and, in any event, his claims here are conclusory. He has not established a reasonable probability that he would have insisted on going to trial but for the allegedly deficient performance. By pleading guilty, Mr. Harper gained valuable benefits, including a two-level reduction for acceptance of responsibility and the dismissal of four counts of the indictment.

Ground Two fails.

### C.  Ground Three: Right to Appeal

In Ground Three, Mr. Harper focuses on what happened after the sentencing hearing and his discussions with counsel about the possibility of an appeal. His allegations are arguably internally contradictory. At one point, he claims that counsel failed to "discuss or offer any information regarding a potential appeal of my sentence. My family and I asked him about appealing the sentence. His responses was that 'I would not win.'" Dkt. 1 at 2. In another place, Mr. Harper claims that counsel did not consult him about an appeal *at all* after the sentencing hearing, arguing that, if counsel had consulted him, counsel would have known that he wanted to appeal. *Id.* at 7. Mr. Harper also incorrectly asserts that there was no appeal waiver in his plea agreement. *Id.* With its response, the United States submitted a declaration from Mr. Harper's counsel, who states under penalty of perjury that Mr. Harper never directed him to file an appeal. Dkt. 8-1 at 4. He also states under penalty of perjury that, after sentencing, he and Mr. Harper discussed the sentence, and he informed Mr. Harper that he had waived his right to appeal and that there was also no reason to appeal. *Id.* He states under penalty of perjury that Mr. Harper agreed. *Id.*

Generally, if a defendant specifically requests that his counsel file a notice of appeal on his behalf, it is per se ineffective assistance of counsel for him to fail to do so. *See Dowell v. United States*, 694 F.3d 898, 901 (7th Cir. 2012). But Mr. Harper does not attest that he asked his counsel to file a notice of appeal for him. And, in his reply, Mr. Harper did not contradict his counsel's declaration testimony that he never directed that counsel file an appeal.

Instead, Mr. Harper focused on his claim that counsel never consulted him about the possibility of an appeal. Giving yet another version of events, Mr. Harper claims:

9

> [Counsel] did not explain to me of my appellate options. I asked him about them and he told me that "I would not win." He never once told me that I waived my rights to appeal in my plea deal. I would have never signed a plea agreement if I knew I was waiving those certain rights.

Dkt. 9 at 1. As to the claims about not being advised that his plea agreement include a waiver of his appellate rights, his current position is belied by his representations to the Court at the change of plea hearing, and he has given the Court no reason to disregard those statements.

As to the claim that counsel failed to explain his appellate options, counsel has a "constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000). Mr. Harper does not contend that he demonstrated to counsel that he was interested in appealing. Instead, he contends that there was reason to think that a rational defendant would want to appeal, noting that counsel "should have recognized that I had a nonfrivolous ground to appeal based on the charges that existed due to knowledge that there was available testimony to at least partially exonerate me" and that "the plea agreement contained no . . . appeal-waiver provision." Dkt. 1 at 7–8.

When considering whether counsel had a duty to consult his client about an appeal, "courts must take into account all the information counsel knew or should have known." *Flores-Ortega*, 528 U.S. at 480. That (contrary to his current representation) Mr. Harper pleaded guilty based on a plea agreement containing an appeal waiver is a "highly relevant factor." *Id.* And Mr. Harper fails to identify what testimony might have "partially exonerated him." No matter what, even if he had, any proposed nonfrivolous argument on appeal did not escape the breadth of his appeal waiver. To the contrary, Mr. Harper expressly waived his "right to appeal the conviction

imposed in this case on any ground" and "any challenge that [his] admitted conduct does not fall within the scope of the applicable statute(s)." Cr. Dkt. 30 at 13. He also agreed that, if he was sentenced "within or below the advisory sentencing guidelines calculated by the Court, regardless of . . . how the sentence is calculated by the Court, then [he] expressly waives [his] right to appeal the sentence imposed in this case on any ground." *Id.*

Moreover, in his plea agreement, Mr. Harper stipulated to several facts that established a factual basis for his guilty plea, and acknowledged that the United States could establish those facts beyond a reasonable doubt at trial. Cr. Dkt. 30 at 7–10. Finally, because Mr. Harper entered into a plea agreement, he fully benefited from a two-level reduction for acceptance of responsibility. Given all these facts, there was no reason to think that a rational defendant would want to appeal, and counsel was not deficient for failing to recognize that Mr. Harper wanted to pursue an appeal based on his "partial exoneration" theory (or any other theory) and to consult him about the possibility of an appeal. *See Kawar v. United States*, No. 2:20CR27-PPS, 2022 WL 17156029, at *4 (N.D. Ind. Nov. 21, 2022) (petitioner did not show that counsel violated constitutional duty to consult concerning a direct appeal where petitioner entered into a plea agreement including a plea waiver, did not assert that he expressed to counsel a desire to appeal, and failed to explain the grounds for any appeal he would have pursued, their merit, or how they would have escaped the breadth of his appeal waiver).

Ground Three fails.

### D.  Ground 4: Fact Investigation

In Ground 4, Mr. Harper contends that counsel was ineffective because he accepted the United States' version of the facts and failed to learn background facts that would have provided a "clearer, more accurate account of what actually occurred." Dkt. 1 at 3–4. But when the Court

asked Mr. Harper whether he had "made a full and truthful disclosure to [Mr. Voyles] about [his] involvement in this offense" by fulling his obligation "to tell [Mr. Voyles] everything about [his] involvement in this offense," Mr. Harper answered, "Yes, I have." Dkt. 67 at 10. Mr. Harper cannot show that counsel was ineffective for accepting the United States' version of facts or that he was prejudiced thereby because Mr. Harper stipulated that the United States' version of facts was true. And to the extent that he is contending that counsel failed to investigate, when counsel's "purported deficiency is based on a failure to investigate, we require the petitioner to allege what the investigation would have produced." *Long v. United States*, 847 F.3d 916, 920 (7th Cir. 2017) (cleaned up). Mr. Harper makes no such allegations.

Ground 4 fails.

### E.  Ground 5: Failing to Advocate

In Ground 5, Mr. Harper contends that counsel "never bothered to argue a single point in [his] favor" or object to the prosecution's allegations at the sentencing hearing. Dkt. 1 at 4.

The claim that counsel argued no points in his favor at sentencing is simply not true. At sentencing, counsel highlighted Mr. Harper's good qualities and argued for a downward departure. Cr. Dkt. 64 at 36–40. Even so, Mr. Harper fails to identify what points counsel might have argued in his favor nor does he explain how those unargued points would have resulted in a lower sentence. And he fails to explain what meritorious objections counsel might have made at the sentencing hearing. Such undeveloped arguments are waived.

Ground 5 fails.

### F.  Ground Six: Insisting on Plea Agreement

In Ground 6, Mr. Harper contends that counsel refused to fight the charges against him, advised him that it was best not to "offer any evidence or arguments to defend [him]," and made

him feel like he had to sign the plea agreement. Dkt. 1 at 4. But Mr. Harper fails to explain how this strategy was deficient. Such undeveloped arguments are waived. Moreover, the record affirmatively belies any argument that counsel was unconstitutionally ineffective for choosing to pursue a plea deal. Mr. Harper stipulated that the government could prove the charges against him beyond a reasonable doubt, and he received substantial benefits because he pleaded guilty—a two-level reduction for acceptance of responsibility and the dismissal of four counts of the indictment. Given these circumstances, it was reasonable for counsel to pursue a plea deal. *See Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (the proper measure of attorney performance is reasonableness under prevailing professional norms).

As for the claim that counsel made him feel like he had to sign the plea agreement because he wanted the 36-month sentence counsel told him he would get, as discussed above, his current position is belied by his representations to the Court at the change of plea hearing. *See* Section III(A), *supra*. At any rate, Mr. Harper cannot show prejudice because he has not demonstrated a reasonable probability that, but for counsel's alleged actions, he would not have pleaded guilty and would have insisted on going to trial. Indeed, he does not even make any conclusory allegations on this point in his § 2255 motion.[2]

Ground 6 fails.

### IV. Conclusion

For the reasons explained in this Order, Mr. Harper is not entitled to relief on his § 2255 motion. There was no ineffective assistance of counsel. Accordingly, his motion for relief under § 2255 is **DENIED** and this action is dismissed with prejudice. Judgment consistent with this

---

[2] As explained in note 1, *supra*, in his reply, Mr. Harper claimed for the first time that he would not have accepted the plea deal if he had been fully advised about its consequences, but he does not contend that he would have insisted on going to trial and, in any event, his argument is conclusory and unsupported by any evidence.

Entry shall now issue and the Clerk shall **docket a copy of this Entry in No. 1:19-cr-00175-SEB-DML.** The motion to vacate (Crim. Dkt. 62) shall also be **terminated** in the underlying criminal action.

### V. Denial of Certificate of Appealability

A habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition, rather, he must first request a certificate of appealability. *See Miller–El v. Cockrell*, 537 U.S. 322, 335 (2003); *Peterson v. Douma*, 751 F.3d 524, 528 (7th Cir. 2014). Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2255 proceedings, and 28 U.S.C. § 2253(c), the Court finds that Mr. Harper has failed to show that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this Court] was correct in its procedural ruling." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). The Court therefore **denies** a certificate of appealability.

**IT IS SO ORDERED.**

Date: 9/26/2023

*Sarah Evans Barker*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

14

Distribution:

BRANDON HARPER
17004-028
VICTORVILLE - MEDIUM II FCI
VICTORVILLE MEDIUM II FEDERAL CORRECTIONAL INSTITUTION
Inmate Mail/Parcels
PO BOX 3850
ADELANTO, CA 92301

Abhishek Kambli
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
abhishek.kambli@usdoj.gov